Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Jeff S. Westerman (SBN 94559)
jwesterman@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Linda Yeates, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br><br>Defendant. | Case No. 8:26-cv-01572<br><br>**CLASS ACTION COMPLAINT**<br><br>ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF<br><br>JURY TRIAL DEMANDED |

Plaintiff Linda Yeates ("Plaintiff") brings this action, individually and on behalf of all others similarly situated, against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant"), and seeks consequential damages, court costs, attorney fees, and civil penalties for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, personal knowledge, and/or facts that are a matter of public record.

## I. INTRODUCTION

1. Plaintiff brings this action against Experian for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA").

2. The PTFA generally protects consumers from abusive, fraudulent, and deceptive commercial uses of telephones in telemarketing. As stated in its legislative declaration (Colo. Rev. Stat. § 6-1-301):

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

3. In 2005, the PTFA was amended to preserve cellular telephone owners' control over the commercial dissemination and use of their cellular telephone numbers and protect the privacy of cellular telephone numbers.

4. Colo. Rev. Stat. § 6-1-304(4)(a) provides: "On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]"

5. The reasoning behind this amendment is simple: according to former Colorado State Representative Mark Cloer's public comments regarding the

amendment, "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[1]

6. These concerns are truer today than they were in 2005. According to a 2025 study conducted by the Pew Research Center, approximately 68% of Americans report receiving scam phone calls weekly, and 61% report receiving scam text messages weekly.[2] Further, 31% of Americans report receiving scam phone calls *daily*.

7. Defendant has disregarded these consumer concerns and the law. In violation of Colo. Rev. Stat. § 6-1-304(4), Experian has listed the cellular telephone numbers of thousands of Colorado residents, including Plaintiff and Class Members, in its for-profit directories, without requesting or receiving affirmative consent to post such listings.

8. Experian has profited from its unauthorized commercial listing of Plaintiff's and Class Members' cellular telephone numbers and other personal information while putting the privacy rights of Coloradans at risk.

9. Plaintiff brings this action individually, and on behalf of all Class Members, to recover civil penalties and other statutorily approved damages and costs pursuant to Colo. Rev. Stat. § 6-1-305, and to prevent Experian from further violating Plaintiff's privacy rights and those of other Colorado cellular telephone users.

## II. PARTIES

10. Plaintiff Linda Yeates is a natural person and a citizen of Colorado residing in Fremont County. On information and belief, Plaintiff's cellular telephone number was and is listed by Experian in a number of Experian databases that are available for commercial purposes, including, but not limited to: Electronic Directory Assistance

---

[1] 9 News Web Team, *Legislative Library: Feb. 23, 2005*, Feb. 22, 2005, https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916 (last visited Jun. 17, 2026).

[2] Gottfreid, Jeffrey; Park, Eugenie; Anderson, Monica; *Online Scams and Attacks in America Today*, Pew Research Center, July 31, 2025, https://www.pewresearch.org/internet/2025/07/31/online-scams-and-attacks-in-america-today/

(EDA), Address Search and Address Update, Phone Append, Bulk Phone Verification, Real-time Phone Verification, Reverse Phone Append, Collection Advantage, Consumer Sync Offline Graph, Consumer Sync Offline Identity Append, Consumer Sync Offline Identity Resolution, Data Append, Experian Access, Experian Identity Append, File One Phones, Phone Validation, Mailing Lists, Prospect IQ, Prospect Triggers, Skip Tracing Tools Software, Social Search, and True Trace. Experian never requested, and Plaintiff never provided, affirmative consent to the listing of her cellular telephone number by Experian.

11. Defendant Experian Information Solutions, Inc. is incorporated in Ohio and has its principal place of business at 475 Anton Blvd., Costa Mesa, CA 92626. Experian transacts business in this District and throughout the United States.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).[3]

13. The Court has general jurisdiction over Defendant because its principal place of business is in this District.

14. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within or were directed from this District.

## IV. FACTUAL ALLEGATIONS

### A. Experian Collects and Lists Consumer Cellular Telephone Numbers

15. Experian is a "data broker," as that term is used by the FTC: a

[3] *Id.*

"company[y] that collect consumers' personal information and resell or share that information with others[.]"[4]

16. Experian monetizes its services by compiling individuals' personal information, including but not limited to cellular telephone numbers, and listing that information in one or more directories. Experian's directories are not publicly accessible for free: it offers its customers a variety of different products through which it provides them with the personal information it collects.

17. For instance, Experian provides the following products, each of which may provide its customers with cellular telephone numbers of individuals (collectively, and without limitation, these products are referred to herein as Experian's "Data Products"):

a. Electronic Directory Assistance (EDA): "Experian's Electronic Directory Assistance (EDA) database offers instant access to national residential and business listings… Obtain accurate phone numbers and address listings quickly for more efficient account management and collections[.]"[5];

b. Address Search and Address Update: "Address Search allows clients to submit an address and receives [sic] below collection information:… Associated telephone numbers for all consumers…Address Search also supplies names and contact information for other individuals, including potential relatives, associated with the same input address."[6]

c. Phone Append: "The phone append software matches names, email addresses, and mailing addresses from the contact list you provide

---

[4] Federal Trade Commission, *Data Brokers, a Call for Transparency and Accountability*, May 2014, https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

[5] https://www.experian.com/small-business/phone-number-verification

[6] https://developer.experian.com/products/us/collections

with phone data from the database."[7]

d. Bulk Phone Verification: "Searches data from nearly 1,500 telecommunications providers in over 200 countries worldwide….Collects important information on the number—such as phone type, network status, and country of origin."[8]

e. Real-time Phone Verification: "Real-time Phone Verification helps you make sure you're getting accurate, updated customer phone information before it even enters your database."[9]

f. Reverse Phone Append: "Experian's Reverse Phone Append (RPA) solution allows businesses to discover a person's name and postal address information in real-time after entering a phone number into the system."[10]

g. Collection Advantage: "Collection Advantage's virtual 'tool box' offers you: … Integration with our MetroNet® skip-tracing service, offering access to multiple phone databases, to enhance dialer productivity and right party contact[.]"

h. Consumer Sync Offline Graph: "Experian's Offline Graph is a deterministic identity data set that links names, addresses, emails, and phones to person and household IDs for accurate targeting, measurement, and enrichment."[11]

i. Consumer Sync Offline Identity Append: "Experian's Offline Identity Append fills in missing names, addresses, or phones to complete records, enabling better collaboration, targeting,

---

[7] https://www.experian.com/business/solutions/data-quality/phone-verification/phone-append

[8] https://www.experian.com/business/solutions/data-quality/phone-verification/bulk-phone-verification

[9] https://www.experian.com/business/solutions/data-quality/phone-verification/real-time-phone-verification

[10] https://www.experian.com/business/solutions/data-quality/phone-verification/reverse-phone-append

[11] https://www.experian.com/marketing/consumer-sync/identity-resolution/offline-graph

messaging, and offline measurement."[12]

j. Consumer Sync Offline Identity Resolution: offers "280 million telephones available to validate your consumer data[.]"[13]

k. Data Append: "We can append basic contact information like addresses, emails, and phone numbers to the customer data you already have."[14]

l. Experian Access: Address search provides "Quick access to other known addresses for debtors, plus additional names, addresses and phone numbers of contact to facilitate location."[15]

m. Experian Identity Append: benefits include "An API that can append email addresses or phone numbers to a name and address can significantly improve data accuracy by filling in missing contact information, reducing errors, and ensuring up-to-date details."[16]

n. File One Phones: "Access more than 245 million consumer phone numbers from credit inquiries and thousands of daily updates with File One Phones."[17]

o. Phone Validation: "Experian Phone Validation is the fast, secure, and accurate way to validate phone number in real-time at the point of data entry."[18]

p. Mailing Lists: "Experian's prospect lists are available for direct mail and telemarketing purposes."[19]

q. Prospect IQ: "Verify your contact data (names, addresses, phones

---

[12] https://www.experian.com/marketing/consumer-sync/identity-resolution/offline-identity-append

[13] https://www.experian.com/marketing/consumer-sync/identity-resolution/offline-identity-resolution

[14] https://www.edq.com/data-quality-platform/data-append/

[15] https://www.experian.com/business/access

[16] https://docs.experianaperture.io/identity-append/experian-identity-append/overview/introduction/

[17] https://www.experian.com/small-business/consumer-phone-number-verification

[18] https://www.experian.com/content/dam/marketing/na/assets/data-quality/documents/product-sheets/experian-phone-validation-product-sheet.pdf

[19] https://www.experian.com/small-business/mailing-lists

and emails) using our industry leading standardization and validation tools."[20]

r. Prospect Triggers: "Prospect Triggers is a preapproved marketing platform to target consumers based on their actual credit behavior, identifying newly triggered consumers. Make timely credit offers by mail, phone or email to increase response rates, reduce overall acquisition costs, boost profitability and reach credit-active consumers."[21]

s. Skip Tracing Tools Software: "Phone numbers are pulled from multiple sources: credit files, white pages, regional Bell operating companies, local exchange carrier listings and additional proprietary phone sources. Best phone number and up to two additional unique numbers are provided per account, including nonpublished, employer, home and cell phone numbers."[22]

t. Social Search: "Help detect fraud or obtain the latest phone number and reporting subscriber contact information where available."[23]

u. True Trace: "Experian's core design includes: Consumer name, best address, plus landline and wireless phone numbers[.]"[24]

18. Plaintiff's cellular telephone number is available via Experian's Phone Validator. On information and belief, Plaintiff's cellular telephone number is available through each of Experian's Data Products that provide its clients with consumer cellular telephone numbers.

19. Experian clearly has a commercial purpose in listing the cellular telephone

---

[20] https://docs.experianaperture.io/identity-append/prospect-iq/get-started/workflow/#stage-1-verification

[21] https://www.experian.com/content/dam/marketing/na/assets/im/consumer-information/product-sheets/prospect-triggers.pdf

[22] https://www.experian.com/small-business/skip-tracing-tools-software

[23] https://www.experian.com/small-business/social-security-search?cat2=debt-collection

[24] https://www.experian.com/content/dam/marketing/na/assets/im/consumer-information/product-sheets/TrueTrace-Product-Sheet.pdf

numbers of Plaintiff and Class Members, as it offers multiple Data Products through which cellular telephone numbers are available to its clients.

**B. Experian's Listing of Cellular Telephone Numbers Harms Consumers**

20. Cellular telephone numbers are valuable both to legitimate companies, and to individuals seeking to perpetuate fraud.

21. Experian itself acknowledges the value of cellular telephone numbers. In advertising its Reverse Phone Append product, Experian states: "Most users now have a phone number tied to them—the majority of them being mobile numbers. Do you know how much the numbers tied to these devices are worth for your business? While a phone number can provide you with the means to reach a customer via a quick call or text, it can also unlock key data insights into your consumers, too."[25]

22. Industry research also confirms that access to consumers through their mobile numbers generates measurable revenue. One survey of more than 900 brands found that 73% of marketers attributed incremental revenue to SMS communications.[26]

23. However, cellular telephone numbers are not always used for legitimate business purposes. According to consumer privacy technology company Optery, "phone numbers are personally identifiable information. Your phone number is linked to your bank accounts, social media profiles, email, and more. Scammers know this and use it to launch phishing attacks, take out loans, and steal your identity."[27]

24. Optery goes on to warn that, "in today's digital age, your phone number is tied to your online identity. Services like banking apps and social media accounts use your number for authentication….Phone numbers are also unique identifiers — they're tied to loyalty programs, ride-sharing services, and delivery apps. When combined with

---

[25] https://www.experian.com/business/solutions/data-quality/phone-verification/reverse-phone-append

[26] Brett, Jen, *We Surveyed 900 Brands Around the Globe and Analyzed 25 Billion Messages. Here's What You Need to Know*., Attentive, March 30, 2023, https://www.attentive.com/blog/marketing-benchmarks-report-highlights?utm_source=chatgpt.com

[27] Frew, Paul; Petrino, Gene; *What Can Someone Do With Your Phone Number?* Optery, https://www.security.org/digital-safety/phone-number/#:~:text=Your%20phone%20number%20can%20be,biometrics%20are%20great%20first%20steps. (last visited Jun. 17, 2026).

public records, they allow scammers to build a complete profile. Scammers can use your number to steal your identity, take out loans, and trick family and friends into sending them money."[28]

25. A cellular phone number "can be used in scams that trick victims into revealing credentials or installing malware," according to Langley Allbritton, president of AI Communications Consulting. "The goal is usually financial fraud, identity theft or account takeover."[29]

26. This is especially true for vulnerable populations, such as the elderly and individuals with disabilities, who are particularly susceptible to being targeted and taken advantage of by phone scammers. The FBI estimates that millions of elderly Americans fall victim to some type of financial fraud each year,[30] and a 2024 FTC report found that "[t]he amount of money victims lose through fraud increases with age," with adults in their 70s losing a median of $1,000 per instance of fraud, more than double the $497 median loss per instance of fraud across all ages.[31]

27. However, regardless of whether cellular phone numbers are being used to perpetuate attempted fraud, or simply for telemarketing services, consumers are clear that they do not want their phone numbers to be available. During fiscal year 2024, the FTC received over 2 million Do Not Call complaints and the Registry included over 253 million active registrations.[32]

28. Plaintiff herself has received a significant amount of telemarketing and/or

---

[28] *Id.*

[29] McKendrick, Joe, *What Can Hackers Do With Your Phone Number? What to Know*, Forbes, Jun. 16, 2026, https://www.forbes.com/sites/technology/article/what-hackers-can-do-with-your-phone-number/

[30] FBI, *Elder Fraud*, https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/elder-fraud (last visited Jun. 17, 2026).

[31] AARP, *$12.5 Billion Reported Lost to Scams and Fraud in 2024, Older Adults Hit Hard*, https://www.aarp.org/money/scams-fraud/older-adults-ftc-fraud-report.html#:~:text=The%20FTC%20found%20that%20among,ages%20in%202024%20was%20%24497 (last visited Jun. 17, 2026).

[32] Federal Trade Commission, *National Do Not Call Registry Data Book for Fiscal Year 2024*, November 2024, https://www.ftc.gov/reports/national-do-not-call-registry-data-book-fiscal-year-2024

spam calls and texts to her cellular phone. Some of these scams include individuals purporting to be from the Department of Motor Vehicles, the United States Postal Service, or private companies such as Amazon. The scams that Plaintiff receives on her cellular phone attempt to solicit information from Plaintiff and/or entice Plaintiff into clicking unsecured hyperlinks.

29. This unwanted solicitation, regardless of whether it is legitimate or fraudulent, is precisely what Colo. Rev. Stat. § 6-1-304(4) was designed to prevent.

30. Experian's misappropriation of Plaintiff's and Class Members' cellular telephone numbers deprives these individuals from the real, quantifiable value of their data and deprives them of their rights under the PTFA.

## V. <u>CLASS ACTION ALLEGATIONS</u>

31. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

32. The Class that Plaintiff seeks to represent is defined as follows:

<u>The Class</u>

> All individuals residing in the State of Colorado whose cellular telephone number was listed by Experian in one or more of its Data Products, from June 17, 2023 to the present.

33. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

34. **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable.

35. **Typicality**: Plaintiff's claims are typical of Class members' claims.

Plaintiff and all Class members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

36. **Adequacy**: Plaintiff's interests are aligned with the Class whom Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

37. **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff; and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

38. **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's Data Products improperly list Class Members' cellular telephone numbers, in violation of Colo. Rev. Stat. § 6-1-304(4);

- whether Plaintiff and Class Members are entitled to damages, equitable relief, injunctive relief, or other relief and, if so, in what amount;
- Whether Plaintiff and Class Members are entitled to civil penalties pursuant to Colo. Rev. Stat. § 6-1-305.

39. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

40. **Injunctive and Declaratory Relief:** Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## VI. CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF PREVENTION OF TELEMARKETING FRAUD ACT
### COLO. REV. STAT. § 6-1-304(4)
(On behalf of Plaintiff and the Class)

41. Plaintiff repleads and incorporates by reference Paragraphs 1-38 as if set forth herein.

42. Plaintiff brings this cause of action individually and on behalf of the Colorado Class.

43. Colo. Rev. Stat. § 6-1-304(4) provides:

> (4)(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing; or

> (II) Uses a scanning device or other electronic means to identify a cellular telephone number and to make a commercial telephone solicitation to a cellular telephone.
>
> (b) This subsection (4) shall not apply to a commercial telephone solicitation that is in relation to a preexisting commercial relationship between the person and the person who owns the cellular telephone.

44. Experian knowingly lists Class Members' cellular phone numbers, including Plaintiff's through one or more of its Data Products.

45. Experian's Data Products constitute a "directory," which can be defined as "a book or electronic resource containing lists of information…for example people's phone numbers or the names and addresses of businesses in a particular area."[33]

46. Experian lists cellular telephone numbers in its directories for a commercial purpose: Experian offers various Data Products for sale through which companies and/or clients can access consumers' cellular telephone numbers. Experian receives compensation in exchange for the vast majority of these Data Products.

47. On information and belief, Experian neither requests nor receives Class Members' "affirmative consent, through written, oral, or electronic means, to such listing" of their cellular telephone numbers. Colo. Rev. Stat. § 6-1-304(4)(a)(I). Rather, Experian routinely lists the cellular telephone numbers of Class Members it has never engaged with and has had no connection or relationship to.

48. Experian's misappropriation of Plaintiff's and Class Members' personal data (including its economic value) comes at the expense of Plaintiff's and Class Members' privacy rights under the PTFA. Experian's conduct deprived Plaintiff and Class Members of the real, quantifiable value of their data, and it exposed Plaintiff and Class Members to elevated risks of harassment, stalking, scams, identity theft, and unwanted telemarketing calls.

49. On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (2) civil

[33] Oxford Learner's Dictionaries, *Directory*, https://www.oxfordlearnersdictionaries.com/definition/english/directory

penalties, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars ($300) and not more than five hundred dollars ($500) for each first offense, and at least five hundred dollars ($500) and not more than one thousand dollars ($1,000) for each second or subsequent offense; (3) consequential damages pursuant to Colo. Rev. Stat. § 6-1-305(1)(c); and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests relief as follows:

A. An order certifying this action as a class action, certifying the Class defined herein, and designating Plaintiff as the representative of the respective Class defined herein;

B. A judgment declaring that Defendant's actions, as described above violate Colo. Rev. Stat. § 6-1-304(4)(a)(I);

C. A judgment awarding Plaintiff and Class Members statutory penalties pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars ($300) and not more than five hundred dollars ($500) for each first offense, and at least five hundred dollars ($500) and not more than one thousand dollars ($1,000) for each second or subsequent offense;

D. A judgment awarding Plaintiff and Class Members any consequential damages they suffered as a result of Defendant's conduct;

E. A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including ordering Defendant to comply with the PTFA;

F. A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as

permitted by law;

G. Pre-judgment and post-judgment interest, as permitted by law; and

H. Grant such other legal and equitable relief as the Court may deem appropriate.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: June 17, 2026

Respectfully submitted,

By: *<u>/s/ Tina Wolfson</u>*
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Jeff S. Westerman (SBN 94559)
jwesterman@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171

*Counsel for Plaintiff and the Proposed Class*